IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Haydar AL DARAJI, Sameeh ALTAYEH, | : | |
| Samia ALTAYEH, Manjit MINHAS , | : | |
| Anna ZOLOTAREV, Boris ZOLOTAREV,[1] | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| DONALD MONICA, USCIS Philadelphia | : | |
| District Director, EMILIO T. GONZALEZ, | : | |
| USCIS Director, MICHAEL CHERTOFF, | : | |
| U.S. Secretary of Homeland Security, | : | |
| ROBERT S. MUELLER III, Director of | : | |
| the Federal Bureau of Investigation, | : | |
| ALBERTO GONZALES, Attorney | : | |
| General of the United States, | : | |
| | : | CIVIL ACTION |
| Defendants. | : | 07-1749 |

**MEMORANDUM AND ORDER**

**L. Felipe Restrepo**                                      **October 12, 2007**
**United States Magistrate Judge**

Plaintiffs Haydar Al Daraji, Sameeh Altayeh, Samia Altayeh, Boris Zolotarev,

and Anna Zolotarev are applicants for United States citizenship by naturalization. See 8

U.S.C. §§ 1421-58.  Plaintiff Manjit Minhas is an applicant for adjustment of status

pursuant to 8 U.S.C. § 1255(a).  On May 1, 2007, plaintiffs initiated this action seeking an

order compelling the United States Citizenship and Naturalization Services ("USCIS") to

adjudicate their applications for naturalization or adjustment of status within period of

---

[1] Plaintiffs acknowledge that Rohan Locke and Carmen Moreno's claims are now moot; accordingly, the Court will not address them.  See Pl.'s Res. Br. 2.

time such as the Court shall determine, pleading jurisdiction under the Immigration and

Nationality Act ("INA"), 8 U.S.C. § 1447(b); the federal question statute, 28 U.S.C. §

1331; the Declaratory Relief Act ("DRA"), 28 U.S.C. §§ 2201-02; the Mandamus

statute, 28 U.S.C. § 1361; and the Administrative Procedure Act ("APA"), 5 U.S.C.

555(b).

  The government moves to dismiss plaintiffs' claims for lack of subject matter

jurisdiction and failure to state a claim upon which relief can be granted under Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Additionally, the government requests

that the Court sever all plaintiffs, arguing that plaintiffs fail to meet the joinder

requirements of Federal Rule of Civil Procedure 20(a).  For the following reasons, the

government's motions are denied, except with regard to the Motion to Dismiss Mr.

Zolotarev's claim for lack of subject matter jurisdiction, which is granted.


## 1. FACTUAL BACKGROUND

  All plaintiffs are applicants either for naturalization or adjustment of status and

await the resolution of their FBI "name checks," see infra, so that the USCIS may

adjudicate their respective applications.

  (1)  Plaintiff Haydar Al Daraji has been a lawful permanent resident ("LPR") of

the United States since August 1993.  See Comp. ¶ 39.  He is a citizen of the Republic of

Iraq.  Id.  On November 24, 2003, he applied for naturalization.  Id. ¶ 40.  On October

14, 2004, his interview and criminal background check were complete.  Id.  In February 2005, Mr. Al Daraji wrote a letter to USCIS inquiring about the status of his application.  Id. ¶ 41.  USCIS responded, notifying him that his application is pending, awaiting the results of an FBI "name check."[2]  Id.  Mr. Al Daraji's application has not yet been adjudicated because of the incomplete name check.  Id.

(2)  Plaintiffs Sameeh and Samia Altayeh are husband and wife.  See Comp. ¶ 43.  Sameeh Altayeh is a citizen of the Kingdom of Jordan and Samia Altayeh is a citizen of the Syrian Arab Republic.  Id.  They have been LPRs of the United States since October and June 1997, respectively.  Id.  Both applied for naturalization on April 17, 2006 and have yet to be interviewed regarding their applications.  Id. ¶ 44.  According to plaintiffs, the Altayehs' applications for naturalization are still pending, awaiting completion of FBI name checks.  Id. ¶ 45.

(3)  Plaintiffs Boris and Anna Zolotarev are husband and wife.  Id. ¶ 56.  They are

---

[2]  In order for USCIS to naturalize an applicant, Congress requires an FBI criminal background investigation "as part of the inquiry into an applicant's 'moral character.'"  Kaplan v. Chertoff, 481 F. Supp. 2d 370, 379 (E.D. Pa. 2007) (citing Pub. L. No. 105-119, 111 Stat. 2448).  Pursuant to 8 C.F.R. § 335.1, USCIS utilizes four different types of background checks: "its own Department of Homeland Security records, the Interagency Border Inspection System ("IBIS") name check, the FBI fingerprint check, and the FBI name check."  Farbakhsh v. USCIS, 2007 U.S. Dist. LEXIS 73400, at *3 (D. Minn. Oct. 1, 2007).  "FBI name checks search multiple FBI databases to determine whether the FBI has encountered the applicant in any investigation."  Id. at *4.  If a match is identified to the applicant's name, "it must be resolved before USCIS can make a favorable decision on the application."  Id.  Both 8 U.S.C. § 1446(d) and 8 C.F.R. § 335.3 require that, once the background checks are completed, "the applicant is interviewed by an examiner who is authorized to grant or deny the application."  Id. at *4-5.  "Occasionally, as it did in [Al Daraji's] case, USCIS will conduct the examination before completion of the background checks, in order to expedite the application process . . . ."  Id. at *5.

citizens of the Ukraine.  Id.  They have been LPRs of the United States since February

1991.  Id.  On December 13, 2004, the Zolotarevs applied for naturalization.  Id. ¶ 57.

Their naturalization interview was scheduled for June 21, 2005, but on June 1, 2005,

USCIS cancelled the interview for an unknown reason.  Id.  The Zolotarevs contacted

USCIS on July 5, 2005 and were told that their applications were awaiting FBI name

checks.  Id. ¶ 58.  Mr. Zolotarev was interviewed on July 20, 2007; Ms. Zolotarev has

not yet been interviewed.  See Def.'s Reply Mem. 3-4; see also Comp. ¶ 58.  The

government has not verified whether either individuals' name check is complete.  See

Def.'s Reply Mem. 3-4; see also Comp. ¶ 58.

(4)  Plaintiff Manjit Minhas is a citizen of the Republic of India seeking lawful

permanent resident status in the United States.  See Comp. ¶ 50.  He submitted an

application for adjustment of status on January 3, 2005 and "successfully completed his

adjustment interview and criminal background checks . . . ."  Id.  On December 28, 2005,

he sought review of his application in person.  Id. ¶ 51.  He was told that his application

is still undergoing the FBI name check.[3]  Id.

---

[3] USCIS conducts the following "security and background checks" on applicants for
adjustment of status: "(a) a record check made against DHS's own immigration systems; (b) an
FBI fingerprint check; © a check against the Interagency Border Inspection System (IBIS); and
(d) an FBI name check, which is run against FBI investigative databases."  Haidari v. Frazier,
2006 WL 3544922, at *1 (D. Minn. Dec. 8, 2006).

## 2.   DISCUSSION

### A.   Subject Matter Jurisdiction

As previously stated, plaintiffs argue that this Court has subject matter jurisdiction pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1447(b); the federal question statute, 28 U.S.C. § 1331; the Declaratory Relief Act ("DRA"), 28 U.S.C. §§ 2201-02; the Mandamus statute, 28 U.S.C. § 1361; and the Administrative Procedure Act ("APA"), 5 U.S.C. 555(b).  See Pl.'s Br. 1-13.

The government raises a factual challenge to the Court's subject matter jurisdiction.  See Def.'s Br. 3-4.  In a factual challenge, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).   The trial court need not presume that the allegations in the complaint are true, "and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  Id.  Plaintiff bears the burden of proving subject matter jurisdiction exists.  Id.

### (1) Section 1447(b)

8 U.S.C. § 1447(b) states, in pertinent part,

> [i]f there is a failure to make a determination under section
> 1446 of this title before the end of the 120-day period after
> the date on which the **examination** is conducted under such
> section, the applicant may apply to the United States district
> court for the district in which the applicant resides for a
> hearing on the matter. Such court has jurisdiction over the

> matter and may either determine the matter or remand the
> matter, with appropriate instructions, to the Service to
> determine the matter.

(Emphasis added.)  This Court has found that the "examination referenced by section

1447(b) and other sections of the INA denotes the interview of an applicant and not the

entire process which includes investigation and criminal background check." See, e.g.,

Ahmed v. Mueller, 2007 U.S. Dist. LEXIS 68847, at *5-6 (E.D. Pa. Sept. 14, 2007); see

also El-Daour v. Chertoff, 417 F. Supp. 2d 679, 683 (W.D. Pa. Aug. 26, 2005) (finding

that the examination refers to the interview of an applicant).  Thus, this Court rejects the

government's argument that the examination is an information gathering process rather

than a solitary event.  See Def. Br. 9 (citing Danilov v. Aguirre, 370 F. Supp. 2d 441,

443 (E.D. Va. 2005)); see also Walji v. Gonzales, 2007 WL 2685028, at *5-6 (5th Cir.

Sept. 14, 2007) ("[T]he majority of courts addressing this issue have concluded that the

term 'examination' in § 1447(b) refers to a discrete event - the agency's initial interview

of the applicant - and that the 120-day period begins to run as of the date that interview

is concluded.").

Plaintiff Haydar Al Daraji has been interviewed by USCIS and 120 days, or more,

has elapsed since his interview.  See 8 C.F.R. § 335.3(a) ("providing that "[t]he decision

to grant or deny the application shall be made at the time of the initial examination or

within 120-days [thereafter].") "If the INS fails to make a decision regarding a

naturalization application within 120 days of an applicant's first interview, the applicant

6

may apply to the United States district court for the district in which the applicant resides for a hearing on the matter." United States v. Hovsepian, 359 F.3d 1144, 1151 (9th Cir. 2004) (en banc).[4]  Thus, this Court has jurisdiction over Mr. Al Daraji's claim under section 1447(b), and denies the government's motion to dismiss his claim.

After the present action was initiated, Boris Zolotarev was interviewed on July 20, 2007. See Def. Reply Mem. 3.  The Government does not specify whether his FBI name check is still pending. Id.  Since 120 days have not elapsed since Mr. Zolotarev's interview, this Court does not yet have subject matter jurisdiction under 8 U.S.C. § 1447(b).  Therefore, Mr. Zolotarev's claim is dismissed without prejudice.[5]

### (2)  The Mandamus Act and the APA

Plaintiffs who have not yet been interviewed for naturalization by USCIS (Anna Zolotarev and Sameeh and Samia Altayeh) or seek adjustment of status (Mr. Minhas) plead jurisdiction under the Mandamus statute and the APA.[6]  Pl.'s Br. 10-13.  "Most of

_____

[4]  The Fifth Circuit has recently noted that if USCIS were allowed to interview applicants and subsequently hold their applications pending the FBI name checks, "the applicant would have no recourse for delays[,] and [the federal] courts could do nothing to encourage or require the CIS and FBI to act in a timely fashion, [which] would entirely erase the effect of section 1447(b)." Walji, 2007 WL 2685028, at *5.

[5]  At the present time, this Court also lacks subject matter jurisdiction over Mr. Zolotarev's case pursuant to the Mandamus statute and the APA. See infra. Should the 120-day time period under 8 U.S.C. § 1447(b) elapse without adjudication by USCIS, Mr. Zolotarev is not precluded from refiling his petition at that time. See Local R. Civ. P. 40.1(c)(1).

[6]  Because Ms. Zolotarev and Mr. and Mrs. Altayeh have not yet been interviewed by USCIS, the 120-day deadline under 8 C.F.R. 335.3(a) and 8 U.S.C. § 1447(b) has not yet been triggered. Thus, the afore mentioned plaintiffs are seeking adjudication within a "reasonable" time period only. See Pl. Br. 10-13. Mr. Minhas is an applicant for adjustment of status under 8

the courts that have addressed the issue agree that, for purposes of compelling agency action that has been unreasonably delayed, the Mandamus statute and the APA are co-extensive." Cao v. Upchurch, 496 F. Supp. 2d 569, 575 (E.D. Pa. 2007).  Accordingly, the Court will address jurisdiction under both statutes in tandem.

28 U.S.C. § 1361 provides that this court has "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361. The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he "has no alternative, adequate remedy" (i.e. he has exhausted all other avenues of relief) and only if the defendant owes him a "clear non-discretionary duty."  See Heckler v. Ringer, 466 U.S. 602, 616-17 (1984); Aerosource, Inc. v. Slater, 142 F.3d 572, 582 (3d Cir. 1998); Shaat v. Klapakis, 2007 U.S. Dist. LEXIS 70338, at *4 (E.D. Pa. Sept. 21, 2007).  The duty owed by the defendant must be "a specific, plain ministerial act 'devoid of the exercise of judgment or discretion.'" Harmon Cove Condominium Ass'n, Inc. v. Marsh, 815 F.2d 949, 951 (3d Cir. 1987) (quoting Richardson v. U.S., 465 F.2d 844, 849 (3d Cir. 1972) (en banc), rev'd on other grounds, 418 U.S. 166 (1974)).

The APA states that "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant

---

U.S.C. § 1255(a); therefore, section 1447(b) (the naturalization statute) does not apply to him.

8

statute, is entitled to judicial review thereof." 5 U.S.C. § 702.  Subject matter jurisdiction

under the APA arises under the federal question statute, 28 U.S.C. § 1331.  Califano v.

Sanders, 430 U.S. 99, 108 (1977); Elhaouat v. Mueller, 2007 WL 233248, at *3 (E.D.

Pa. Aug. 9, 2007) (citing Kim v. Ashcroft, 340 F. Supp. 2d 384, 388 (S.D.N.Y. 2004)).

Under the APA, a court is permitted to "compel agency action unlawfully withheld or

unreasonably delayed."  5 U.S.C. § 706(1); see also id. § 555(b) (providing that "within a

reasonable time, each agency shall proceed to conclude a matter presented to it.").

Defendants argue that Norton v. So. Utah Wilderness Alliance, 542 U.S. 55

(2004) "disposes of both the APA and mandamus prong of plaintiffs' jurisdictional

allegation," see Def.'s Mem. 13-17, because "the only agency action that can be

compelled under the APA is action legally required."  Norton v. So. Utah Wilderness

Alliance, 542 U.S. at 63.  Defendants argue that the INA and its implementing

regulations do not create a duty in USCIS to adjudicate an application for naturalization

within any particular period of time.  See Def.'s Mem. 13-17.

With regard to Mr. Minhas's application for adjustment of status, the governing

statute states, "[t]he status of an alien who was inspected and admitted or paroled into

the United States . . . may be adjusted by the Attorney General, in his discretion and

under such regulations as he may prescribe . . . ."  8 U.S.C. § 1255(a).  Defendants

correctly assert that no time period is specified for the completion of such applications,

see Def. Mem. 18; 8 C.F.R. § 245, and extend their argument regarding the

9

uninterviewed naturalization plaintiff-applicants to Mr. Minhas. With regard to all

plaintiffs' claims, defendants argue, there is no "specific, unequivocal command" for the

court to enforce *via* mandamus or under the APA.  Id.

This court rejects the government's argument under Norton. See Shaat v.

Klapakis, 2007 U.S. Dist. LEXIS 70338, at *9-11 (E.D. Pa. Sept. 21, 2007) (collecting

cases).  This Court has previously held that

> [a]lthough there may be no particular statutory deadline
> presently applicable to the processing of [plaintiffs']
> application[s], the agency has no discretion over **whether** to
> render a decision on the application.  The agency's
> regulations unequivocally and specifically command the
> agency to adjudicate naturalization applications: The agency
> "shall conduct an investigation," "shall grant the application
> if the applicant has complied with all requirements," and
> "shall" notify the applicant of the agency's decision.

Id. at *9-10 (citing 8 C.F.R. §§ 335.1, 335.3(a)); see also Kaplan v. Chertoff, 481 F.

Supp. 2d 370, 399-400 (rejecting the proposition that CIS possesses "unfettered

discretion to regulate aliens to a state of limbo, leaving them to languish there

indefinitely.").

Though the government asks this Court to follow Badier v. Gonzales, 2006 WL

4079085 (N.D. Ga. Dec. 1, 2006), see Def. Mem. 14-17, the majority of district courts

have already held that "Badier's analysis would make it permissible for an agency to

never act so long as there was no 'statutorily prescribed time frame' for it to do so, a

result [that] makes little sense in light of 5 U.S.C. § 555(b), which requires agencies to

act within a 'reasonable time' on matters presented to it." Shaat, 2007 U.S. Dist. LEXIS 70338 at *12 (quoting Elhaouat, 2007 WL 233248, at *4) (quoting Badier, 475 F. Supp. 2d at 1297)).  "Congress could not have intended to authorize potentially interminable delays."  Shaat, 2007 U.S. Dist. LEXIS 70338, at *12 (quoting Agbemaple v. INS, 1998 WL 292441 at *2 (N.D. Ill. May 18, 1998).

As in Kaplan v. Chertoff, this Court finds that since "Congress has conditioned CIS's mandatory action on the FBI's completion of background checks, and [since] applicants must pay the FBI, through CIS, to complete the background checks, . . . Congress has, by implication, imposed on the FBI a mandatory duty to complete the background checks."  481 F. Supp. 2d at 401.  Consequently, "the APA requires that the FBI complete the criminal background checks in a reasonable amount of time."  Id.

"[W]hen an agency is required to act - either by organic statute or by the APA - within [a] . . . reasonable time, § 706 [of the APA] leaves in the courts the discretion to decide whether agency delay is unreasonable." Duan v. Zamberry, 2007 WL 626116 at *4 (W.D. Pa. February 23, 2007) (quoting Forest Guardians v. Babbitt, 174 F.3d 1178, 1190 (10th Cir. 1998).  For the afore mentioned reasons, this Court finds that it has jurisdiction over Ms. Zolotarev, Mr. and Mrs. Altayeh, and Mr. Minhas's claims under the Mandamus statute and the APA, and denies the government's motion to dismiss their claims.  Further, the Court finds that Mr. Al Daraji and Mr. Zolotarev are not precluded

from seeking relief under these provisions.[7]

### (3)    8 U.S.C. § 1252(a)(2)(B) and 1252(g)

In addition to rejecting the government's arguments under the Mandamus statute and APA, the Court will also reject an additional challenge to jurisdiction over Mr. Minhas's claim under 8 U.S.C. §§ 1252(a)(2)(B) and 1252(g).

Section 1252(a)(2)(B) states, with some irrelevant exceptions, that the court does not have jurisdiction to review either "(I) any judgment regarding the granting of relief under section . . . 1255 of this title [addressing adjustment of status]" or "(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." See Cao, 496 F. Supp. 2d at 572.  Defendants argue that the text of 8 U.S.C. § 1252(a)(2)(B) precludes judicial review and renders the adjustment of status petition process "quintessentially discretionary."  See Def.'s Mem. 19.  "

However, section 1252(a)(2)(B)(I) only precludes judicial review of "judgment[s] . . . granting … relief . . . ."  See Cao, 496 F. Supp. 2d at 572.  "The term **judgment** is not defined in the INA . . . ."  Id. (citing 8 U.S.C. § 1001).  In Cao, the Court held that

---

    [7]  Because the Court finds that it has jurisdiction under the Mandamus statute and the
APA, the Court needs not reach the question whether the APA in conjunction with 28 U.S.C. §
1331 or the DRA, 28 U.S.C. §§ 2201-02, provide additional grounds for jurisdiction over this
action.

when USCIS fails to adjudicate an application for adjustment of status, it has not

effectively made any judgment at all.  Id.  Because no judgment was made in that case,

"section 1252(a)(2)(B)(I) by its terms [does] not apply."  Id.  Under these parameters, the

USCIS has reached no judgment regarding Mr. Minhas's application; therefore, section

1252(a)(2)(B)(I) is inapplicable to Minhas' case and does not preclude judicial review.

Section 1252(a)(2)(B)(ii) strips the Courts of jurisdiction over certain decisions

"the authority for which is specified under this subchapter to be in the discretion of the

Attorney General or the Secretary of Homeland Security . . . ."  8 U.S.C. §

1252(a)(2)(B)(ii).  Defendants argue that this language provides USCIS with unfettered

discretion to delay adjudications for an indefinite period of time.  However, as the Third

Circuit has stated,

> [o]ne might mistakenly read section 1252(a)(2)(B)(ii) as stripping us of the
> authority to review any discretionary immigration decision.  That reading,
> however, is incorrect, because section 1252(a)(2)(B)(ii) strips us only of
> jurisdiction to review discretionary authority **specified in the statute**.  The
> statutory language is uncharacteristically pellucid on this score; it does not
> allude generally to "discretionary authority" or to "discretionary authority
> exercised **under this statute**," but specifically to "authority for which is
> **specified under this subchapter** to be in the discretion of the Attorney
> General."

Khan v. Att'y Gen. Of the U.S., 448 F.3d 226, 232 (3d Cir. 2006) (quoting Zhao v.

Gonzales, 404 F.3d 295, 303 (5th Cir. 2005).  "'[T]o specify' means '[t]o state explicitly

or in detail' . . . ."  Khan, 448 F.3d at 233 (citing Am. Heritage Coll. Dict. 1307 (3d ed.

1993)).

13

"While 8 U.S.C. § 1255(a) specifically places the decision of whether to adjust status in the discretion of the Attorney General, it says nothing about the pace of such a decision, and certainly does not confer on the Attorney General discretion to let such a petition languish indefinitely."  Cao, 496 F. Supp. 2d at 573; see also Song v. Klapakas, 2007 WL 1101283, at *4 (E.D. Pa. April 12, 2007); Xu v. Chertoff, 2007 WL 2033834, at *4 (D. N.J. July 11, 2007); Duan, 2007 WL 626116, at *2 (finding that "[a]lthough the speed of processing may be 'discretionary' in the sense that it is determined by choice, and that it rests on various decisions that defendants may be entitled to make, it is not discretionary in the manner required by the jurisdiction-stripping language of the [statute]").  The government's argument that processing delays are justified by "heightened security concerns in the post-911 . . . world" do not persuade this Court that it should not intervene when an adjudication is delayed for an unreasonable time.  Cao 496 F. Supp. 2d at 574 (quoting Safadi v. Howard, 466 F. Supp.2d 696, 701 n.6 (E.D. Va. 2006)).  USCIS has total discretion, not subject to judicial review, to deny adjustments of status for those applicants who present security risks; such discretion obviates any purported need to delay applications unreasonably.  See Cao, 496 F. Supp. 2d at 574.

In addition, defendants argue that 8 U.S.C. § 1252(g) precludes Mr. Minhas's adjustment of status application from judicial review.  Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien

arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien . . . ."  Section 1252 concerns only "[j]udicial review of orders of removal."  Cao, 496 F. Supp. 2d at 574 (quoting 8 U.S.C. § 1252).  "In the REAL ID Act of 2005, Pub.L. No. 109-13, 119 Stat. 213, div. B, ("RIDA"), Congress inserted the words 'and regardless of whether the judgment, decision, or action is made in removal proceedings' into Section 1252 (a)(2)(B), thereby making the language of that subsection applicable to all immigration decisions."  Cao, 496 F. Supp. 2d at 574 (quoting RIDA § 101(f)(2)).  Since Congress chose not to use the same language in section 1252(g), the jurisdiction stripping language of that section cannot be interpreted "as applying outside the removal context generally" without leaving the language in section 1252(a)(2)(B) a "surplusage."  Id. Consequently, this court does not interpret section 1252(g) as precluding jurisdiction over Mr. Minhas's claims.

To support their argument under section 1252(g), the government erroneously relies on Gomez-Chavez v. Perryman, 308 F.3d 796 (7th Cir. 2002).  In that case, Mr. Gomez-Chavez was subject to a decision by the government to deport him, which is expressly precluded from judicial review by section 1252(g).  Id. at 799.  "Section 1252(g) only applies to situations 'arising from all past, pending, or future exclusion, deportation, or removal proceedings.'"  Xu, 2007 WL 2033834, at *4 (quoting Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 943 (1999)).  Mr. Minhas

15

has been subjected to no such exclusion, deportation, or removal proceedings; therefore, section 1252(g) is inapplicable to his claims.  See Cao, 496 F. Supp. 2d at 574.

In sum, the aforementioned statutes do not strip this Court of jurisdiction over Mr. Minhas' claims.

### B.    Motion to Dismiss

When considering the government's Rule 12(b)(6) motion, the Court "accept[s] as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Evancho v. Fisher, 423 F.3d 347, 350-51 (3d Cir. 2005) (citing Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989); D.P. Enter. Inc. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984)).  Given this threshold, plaintiffs have stated a claim upon which relief could be granted.  Therefore, the governments motion to dismiss under Fed. R. Civ. P. 12(b)(6) is denied.[8]

### C.    Motion to Sever

The government motions the Court to "sever all plaintiffs other than the first named plaintiff, Mr. [Al] Daraji."  See Def.'s Mem. 24.  The government alleges that plaintiffs' claims do not arise from the same transaction or occurrence, nor do they

---

[8]  Plaintiffs pled an alleged violation of their Due Process rights, but have since withdrawn that claim.  See Pl.'s Response Br. 13.

16

contain a common question of law or fact, because plaintiffs are citizens of different

nations and are asking for various forms of immigration status. In addition, the

government argues, some plaintiffs have been interviewed and others have not,

triggering different time periods for adjudication of their applications.[9]  See id. at 24.

Federal Rule of Civil Procedure 20(a) (permissive joinder) states that

> [a]ll persons may join in one action as plaintiffs if they assert
> any right to relief jointly, severally, or in the alternative, in
> respect of or arising out of the same transaction, occurrence,
> or series of transactions or occurrences and if any question of
> law or fact common to all these persons will arise in the
> action.

Fed. R. Civ. P. 20(a).  Thus, this Court must determine (1) whether plaintiffs' claims

arise from the same transaction, occurrence, or series of transactions or occurrences, and

(2) whether a common question of law or fact will arise in the litigation.  Miller, 202

F.R.D. at 144; In Re Orthopedic Bone Screw Products Liab. Litig., 1995 WL 428683, at

*1 (E.D. Pa. July 17, 1995); see also 7 Wright, Miller & Kane, Fed. Prac. & Pro., § 1683

at 443 (1986).  We find that plaintiffs satisfy both the first and second prongs of the test

for permissive joinder at this stage of the instant litigation.

The first prong addresses whether plaintiff's claims arise from the same

"transaction or occurrence" or "series of transactions or occurrences."  Miller, 202

---

[9]  The government also alleges that plaintiffs' motivation for joinder is avoidance of filing
fees.  See Def. Mot. 24. Because this accusation is unsupported by any evidence or citations to
legal authority, it is rejected.

F.R.D. at 144 (citing 7 Wright, Miller & Kane § 1652 at 395 (3d ed. 2001)).

"'Transaction' is a word of flexible meaning," which "may comprehend a series of many

occurrences, depending not so much upon the immediateness of their connection as upon

their **logical relationship**." Miller, 202 F.R.D. at 144 (quoting Mosley, 497 F.2d at

1333) (quoting Moore v. New York Cotton Exch., 270 U.S. 593, 610 (1926)).

In this case, the Court finds that plaintiffs' claims arise from the same transaction

or occurrence under Rule 20(a) because plaintiffs universally challenge USCIS's alleged

unreasonable delay in processing their immigration applications due to the newly-

required FBI "name checks."  Regardless of the differences in plaintiffs' positions with

regard to their immigration applications and their various citizenship, the "series of

transactions or occurrences" they uniformly challenge are one: the allegedly delayed

actions of USCIS in adjudicating their applications due to the newly-required FBI name

checks.

In so finding, the Court recognizes that it seemingly contradicts the Ninth

Circuit's holding in Coughlin v. Rogers, 130 F.3d 1348 (9th Cir. 1997), though neither

of the instant parties cited this case.  As here, Coughlin v. Rogers was a suit filed by

multiple plaintiff-applicants for USCIS immigration action, alleging delays in

adjudicating their applications and asking for relief under the writ of mandamus and the

APA.  130 F.3d at 1348-50.  In Coughlin, the government moved to sever the forty-nine

(49) joined plaintiffs.  Id. at 1350.  The district court granted the motion to sever.  In

upholding the district court's action, the Ninth Circuit stated,

> the mere allegation of general delay is not enough to create a common transaction or occurrence. Each [p]laintiff has waited a different length of time, suffering a different duration of alleged delay. Furthermore, the delay is disputed in some instances and varies from case to case … there may be numerous reasons for the alleged delay.

Id.

The Court distinguishes the present case from Coughlin on several grounds.  First, Coughlin involved 49 plaintiffs, some of whom were subject to immigration review and some of whom filed suit on behalf of an alien spouse, child, or worker.  Id. at 1349-50. The instant case involves merely five (5) plaintiffs, all of whom have already applied for naturalization or adjustment of status, and who bring this suit solely on their own behalf. Second, the plaintiffs in Coughlin did not allege a "pattern or policy of delay" in dealing with all applications and/or petitions by the INS [now USCIS]."  Id. at 1350.  The Ninth Circuit stated, in *dicta*, that if the plaintiffs had alleged that the delay in adjudicating their petitions was the result of a "pattern or policy," then their claims would "arise out of a systematic pattern of events and, therefore, arise from the same transaction or occurrence."  Id.  In the instant case, plaintiffs **have** alleged injury due to a policy or practice of delay on USCIS's part.  See Comp. ¶¶ 37, 60-64, 68.  Thus, the Court finds that our decision to deny severance in this case is consistent with the Ninth Circuit's reasoning in Coughlin.

19

The second prong of the test for permissive joinder requires the Court to determine whether "any [common] question of law or fact ... will arise in the action." Fed. R. Civ. P. 20(a).  The threshold for the commonality requirement is "very low." Miller, 202 F.R.D. at 145 (citing Barnes v. Am. Tobacco Co., 161 F.3d 127, 141 n. 15 (3d Cir. 1998)).  A defendant's conduct is a sufficient commonality to justify permissive joinder, even though defendant's individual acts towards plaintiffs were separate incidents, because "[plaintiffs are] bound by and share the character of the defendant's allegedly adverse conduct."  Miller, 202 F.R.D. at 145 (citing Mosley, 497 F.2d at 1334). In the instant case, all plaintiffs were allegedly adversely affected by USCIS's delay in processing their immigration applications due to the FBI "name checks." Thus, the Court finds that this is sufficient commonality to permit joinder.

Again, the Court distinguishes our finding with regard to commonality from that in Coughlin.  Coughlin noted that an allegation of a "policy of delay," such as that alleged in this case, would increase the commonality quotient of plaintiffs' claims. Coughlin, 130 F.3d at 1351.  Coughlin also found that because the plaintiffs had filed "different applications, petitions, or forms . . . the INS must apply different legal standards to each type of application or petition . . . [which] may require different time frames."  Id.  The Court finds Coughlin's approach outdated.  The issue in cases such as the instant one is the unreasonableness of the delay in adjudication.  See 8 U.S.C. § 555(b).  The applicable legal standard to the particular type of application is irrelevant to

the fact of an unreasonable delay on USCIS's part, regardless of whatever machinations

occur behind agency walls which cause the delays.  See Kaplan, 481 F. Supp. 2d 399-

400; Cao, 496 F. Supp. 2d at 574.

The Court shall also briefly address Abdelkarim v. Gonzales, 2007 U.S. Dist.

LEXIS 31407, at *4 (E.D. Mich. April 30, 2007), in which the district court severed

fifty-nine (59) plaintiffs (all LPRs seeking naturalization) in an action brought under the

writ of mandamus and the APA.  In that case, the parties provided the court with much

more information regarding the reasons for the delays in USCIS adjudication, leading

that court to determine that the facts of the plaintiffs' cases were disparate enough to

destroy commonality.  Abdelkarim v. Gonzales, 2007 U.S. Dist. LEXIS 31407, at *14-18

("Although each of the approximately 59 [p]laintiffs here alleges a delay in processing

their individual applications for naturalization, the reasons for the delays vary and are

dependent upon each [p]laintiff's particular circumstances.").  For example, some of the

delays were a result of certain plaintiffs' failure to appear for scheduled fingerprinting or

interviews, whereas other plaintiffs provided incorrect information in their pleadings.  Id.

at 15.

A similar quantity of evidence pertaining to the particularized circumstances

regarding USCIS's delays has not been provided to this Court at this stage in the

litigation.  Thus far, the government has not alleged any distinguishing reasons why the

individual plaintiffs' applications have been delayed.  Further, in Abdelkarim, the FBI

had completed some of the plaintiffs name checks, whereas others were incomplete.  Id.

In the instant case, all plaintiffs await the resolution of their name checks.  Thus, the

Court concludes that, at the present time, insufficient evidence of individual causes for

delay has been presented to justify severance.  Should such evidence be presented at a

later date, the Court retains the option to sever under Federal Rule of Civil Procedure 21.

See Fed. R. Civ. P. 21.

Rule 20(a)'s purpose is to "promote trial convenience and expedite the final

determination of disputes, thereby preventing multiple law suits."  Miller v. Hygrade

Food Products Corp., 202 F.R.D. 142, 144 (E.D. Pa. 2001) (quoting 7 Wright, Miller &

Kane § 1652 at 395 (3d ed. 2001)); Mosley v. General Motors Corp., 497 F.2d 1330,

1332 (8th Cir. 1974).  Rule 20 is "designed to promote judicial economy … reduce

inconvenience, delay, and added expense."  See Coughlin, 130 F.3d at 1351.  Moreover,

permissive joinder falls "within the court's sound discretion and is to be **liberally**

**granted**; 'the impulse is toward entertaining the broadest possible scope of action

consistent with fairness to the parties; joinder of claims, parties, and remedies is **strongly**

**encouraged**.'"  Miller, 202 F.R.D. at 144 (quoting United Mine Workers of Am. v.

Gibbs, 383 U.S. 715, 724 (1966)) (emphasis added.)  Thus, at the present time, the Court

finds that the interests of justice and judicial economy are served by denying the

government's motion to sever.

An implementing order follows.