IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Haydar AL DARAJI, Sameeh ALTAYEH, and Samia ALTAYEH[1], | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| DONALD MONICA, USCIS Philadelphia District Director, EMILIO T. GONZALEZ, USCIS Director, MICHAEL CHERTOFF, U.S. Secretary of Homeland Security, ROBERT S. MUELLER III, Director of the Federal Bureau of Investigation, MICHAEL B. MUKASEY[2], Attorney General of the United States, | : | |
| Defendants. | : | NO. 07-1749 |

## MEMORANDUM AND ORDER

**L. Felipe Restrepo**                                                                             **January 18, 2008**
**United States Magistrate Judge**

Plaintiffs Haydar Al Daraji and Sameeh and Samia Altayeh have pending N-400 applications for United States citizenship by naturalization. Mr. Al Daraji is a citizen of the Republic of Iraq, Mr. Altayeh is a citizen of the Kingdom of Jordan, and Ms. Altayeh is a citizen of the Syrian Arab Republic. On May 1, 2007, plaintiffs jointly initiated this action seeking an order compelling the United States Citizenship and Immigration Services ("USCIS") to

---

[1] USCIS has adjudicated plaintiffs Rohan Locke, Carmen Moreno, Manjit Minhas, Boris Zolotarev, and Anna Zolotarev's applications for immigration benefits, and the parties have entered into stipulations for the dismissal of their claims. Accordingly, Haydar Al Daraji, Sameeh Altayeh, and Samia Altayeh are the remaining plaintiffs. Def. Mem. Summ. J. 1.

[2] This Court shall substitute Alberto R. Gonzales with newly appointed Attorney General Michael B. Mukasey pursuant to Fed. R. Civ. P. 25(d)(1).

adjudicate their applications for naturalization within a period of time such as the Court shall determine, pleading jurisdiction under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1447(b); the federal question statute, 28 U.S.C. § 1331; the Declaratory Relief Act ("DRA"), 28 U.S.C. §§ 2201-02; the mandamus statute, 28 U.S.C. § 1361; and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 706(1).

The government filed Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) motions to dismiss plaintiff's claims for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, and a motion to sever pursuant to Rule 20(a). (Doc. No. 17.) On October 12, 2007, this Court denied the government's motions, asserting jurisdiction over Mr. Al Daraji's claim under 8 U.S.C. § 1447(b) and Mr. and Ms. Altayeh's claims under the mandamus statute, the APA, and the federal question statute. (Doc. No. 24.)

On November 15, 2007, the government filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. No. 32.) Plaintiffs filed a response on November 19, 2007. (Doc. No. 33.) After conferring with both parties, this Court gave notice of its intent to consider the filings to be cross-motions for summary judgment in its December 5, 2007 Order. (Doc. No. 35.)

For the reasons set forth below, this Court will deny the government's motion for summary judgment and grant summary judgment to all three plaintiffs. The Court remands plaintiffs' applications to USCIS and the FBI for adjudication within ninety (90) days.

      **A.**    <u>**SUMMARY JUDGMENT STANDARD OF REVIEW**</u>

Summary judgment will be granted "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id. at 248.

This Court must view evidence presented on the motion in the light most favorable to the non-moving party, and make every reasonable inference in their favor.  Anderson, 477 U.S. at 255; Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005) (citations omitted).  Thus, summary judgment is appropriate when this Court determines that, after viewing the evidence and making all inferences in favor of the non-moving party, there is no genuine issue of material fact to warrant a trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

During a conference call on December 5, 2007, the parties stated that they did not intend to submit any additional evidentiary materials and that there were no material factual disputes. The Court advised the parties that the plaintiffs' response to the government's motion for summary judgment, (Doc. No. 33), would be treated as a cross-motion for summary judgment.[3] A district court may grant summary judgment *sua sponte* to a party who has not formally moved for it.  Celotex Corp., 477 U.S. at 326; Gibson v. Mayor and Council of City of Wilmington, 355 F.3d 215, 222 (3d Cir. 2004) (quoting Chambers Dev. Co. v. Passaic County Utils. Auth., 62 F.3d 582, 584 n. 5 (3d Cir. 1995)).  "Where it appears clearly upon the record that all of the

---

[3]     Plaintiffs did not file a motion for summary judgment. They filed a response to the government's Rule 56 motion.

evidentiary materials that a party might submit in response to a motion for summary judgment are before the court, a *sua sponte* grant of summary judgment against that party may be appropriate if those materials show that no material dispute of fact exists and that the other party is entitled to judgement as a matter of law." Gibson, 355 F.3d at 224. A *sua sponte* grant of summary judgment is appropriate here. See, e.g., Han Cao v. Upchurch, 496 F. Supp. 2d 569, 576 (E.D. Pa. 2007).

When a district court grants summary judgment in favor of a non-moving party, it must "'first plac[e] the adversarial party on notice that the court is considering a *sua sponte* summary judgment motion.'" Gibson, 355 F.3d at 222 (quoting Chambers Dev. Co., 62 F.3d at 584 n.5); see also Celotex Corp., 477 U.S. at 326 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence.")[4]. This Court gave the parties the required notice over a month ago in its December 5, 2007 Order. (Doc. No. 35.)

Because the Court will consider the parties' filings to be cross-motions for summary judgment, we will discuss the appropriate standard of review. Cross-motions for summary judgment are reviewed independently. See Startzell v. City of Philadelphia, 2007 WL 172400, at

---

[4] "[T]he Federal Rules of Civil Procedure clearly require that parties be given ten days notice that a motion for summary judgment is being considered." Gibson, 355 F.3d at 223 (citing Fed. R. Civ. P. 56(c)). The Third Circuit has held that "the notice requirement applies to *sua sponte* grants of summary judgment." Id. (quoting Otis Elevator Co. v. George Washington Hotel Corp., 27 F.3d 903 (3d Cir. 1994). A party must be given notice when summary judgment is being contemplated against it so that the evidence necessary to oppose the motion may be "marshaled and presented" to the Court. Gibson, 355 F.3d at 223. In the context of *sua sponte* summary judgment, the Third Circuit has followed the First Circuit in finding that the appropriate definition of notice is such that a noticed party "had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward." Id. (quoting Leyva v. On the Beach, Inc., 171 F.3d 717, 720 (1st Cir. 1999) (internal citations omitted).

\*4 (E.D. Pa. Jan. 18, 2007).  The moving party in each motion bears the initial burden of demonstrating that there is no triable issue of fact as to all the elements of any issue on which the moving party bears the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also In re Bessman, 327 F.3d 229, 237-38 (3d Cir. 2003) (citations omitted).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party must show that there is an absence of evidence to support the non-moving party's case.  Celotex, 477 U.S. at 325.

After the moving party has met their burden, "the [non-moving] party's response … must set forth specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see also Williams v. West Chester, 891 F.2d 458, 464 (3d Cir. 1989).  Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact.  Boykins v. Lucent Tech., Inc., 78 F. Supp. 2d 402, 407 (E.D. Pa. 2000).  Rather, the non-moving party must support each essential element of its claim with specific evidence from the record.  Celotex, 477 U.S. at 322.  If the non-moving party fails to make a sufficient factual showing regarding the essential elements on which they bear the burden of proof at trial, summary judgment is appropriate.  Id.

### B.  HAYDAR AL DARAJI

Plaintiff Haydar Al Daraji filed a first N-400 application for naturalization on or around August 6, 2000.  His application was denied on February 6, 2002 for "failing to meet the good moral character requirement."  See Def. Mem. on Points and Authorities 3; Def. Ex. A, Decl. of

Evangelia Klapakis,[5] Field Office Director, Dist. 5, USCIS ¶ 7. Mr. Al Daraji appealed this denial, and USCIS upheld its decision on April 25, 2003. Id.

     Mr. Al Daraji filed a second N-400 application for naturalization on November 24, 2003. Compl. ¶ 40; Klapakis Decl. ¶ 7. This second application is the one at issue in the present case. In connection with his second application for naturalization, USCIS interviewed Mr. Al-Daraji on October 14, 2004, and submitted a name check request to the FBI on or around December 19, 2003. See Compl. ¶ 13; Def. Mem. 1, 3; Klapakis Decl. ¶¶ 9, 12. On or around July 17, 2007, the FBI completed his name check. See Def. Mem. 2; Klapakis Decl. ¶ 12. Mr. Al Daraji's fingerprint and IBIS checks are also complete. Klapakis Decl. ¶¶ 10-11. USCIS asserts that his application is currently under review. Klapakis Decl. ¶¶ 14, 16. Mr. Al Daraji's application has been pending for over three (3) years since his interview; in all, his application has been pending for approximately four (4) years.

     As fully discussed in the Court's previous Memorandum and Order, 8 U.S.C. § 1447(b) grants the district court jurisdiction to hear Mr. Al Daraji's claim and authorizes us to "either determine the matter or remand the matter, with appropriate instructions, to the Service" for determination if USCIS has not adjudicated plaintiff-applicant's petition for naturalization within 120 days of his examination.[6] 8 U.S.C. § 1447(b); Al Daraji v. Monica, 2007 WL 2994608, at *3

---

[5] Ms. Klapakis' Declaration misspells this name. The Court will use the correct spelling in its opinion.

[6] This Court also found that the term "examination" in Section 1447(b) refers to the interview of a naturalization applicant and not to the USCIS and FBI's entire process of investigation and background check, an issue that has divided district courts nationally. See Al Daraji, 2007 WL 2994608, at *3 (citing Ahmed v. Mueller, 2007 U.S. Dist. LEXIS 68847, at *5-6 (E.D. Pa. Sept. 14, 2007)); but see, e.g., Danilov v. Aguirre, 370 F. Supp. 2d 441, 443 (E.D. Va. 2005).

(E.D. Pa. Oct. 12, 2007) (Doc. No. 24); see also Etape v. Chertoff, 497 F.3d 379 (4th Cir. 2007); Wajli v. Gonzales, 500 F.3d 432 (5th Cir. 2007); United States v. Hovsepian, 359 F.3d 1144 (9th Cir. 2004).

Notably, the government does not mention Section 1447(b) with regard to Mr. Al Daraji in their Motion for Summary Judgment.  However, the INA's statutory language and USCIS's own regulations make it clear that Section 1447(b) is violated in situations where USCIS does not adjudicate applications within the defined 120-day period after examination, such as Mr. Al Daraji's.  See 8 C.F.R. § 312.5(b) (2006); Wajli, 500 F.3d at 439; Assadzadeh v. Mueller, 2007 WL 3252771, at *1 (E.D. Pa. Oct. 31, 2007); see also Manzoor v. Chertoff, 472 F. Supp. 2d 801, 806-07 (E.D. Va. 2007) (discussing Section 1447(b)'s legislative history, indicating Congress' intent to establish a 120-day time limit for adjudication when enacting the Immigration Act of 1990).

Consistent with the "vast majority" of district courts that have addressed the issue, this Court concludes that remand to USCIS is appropriate.  See Manzoor, 472 F. Supp. 2d at 810. Because Mr. Al Daraji's interview and background checks have been completed, he is in the same procedural position with regard to the adjudication of his naturalization application as the plaintiff in Wajli v. Gonzales, where the Fifth Circuit remanded to USCIS "where there should be no [further] impediment to the prompt resolution of the application." 500 F.3d at 439; see also Antonishin v. Keisler, 2007 U.S. Dist. LEXIS 70063, at *13 (N.D. Ill. Sept. 20, 2007).

Although this Court has jurisdiction to decide Mr. Al Daraji's application, USCIS is the proper adjudicator given its expertise in naturalization matters.  See Antonishin, 2007 U.S. Dist. LEXIS 70063, at *13 (citing Immigration and Naturalization Serv. v. Ventura, 537 U.S. 12, 16-

17 (2002) (remand is generally the better course . . . "in the immigration context."). The agency's expertise is particularly relevant in this case because it has indicated that the information they received from the security checks related to Mr. Al Daraji's application may require additional evidence or a second interview.[7] See Klapakis Decl. ¶ 14. Thus, we remand to USCIS to adjudicate Mr. Al Daraji's application within 90 days.

### C. SAMEEH AND SAMIA ALTAYEH

Plaintiffs Sameeh and Samia Altayeh also await adjudication of their N-400 applications for naturalization. See Compl.'s ¶ 14-15; Def. Mem. 1-2. Mr. and Ms. Altayeh filed their applications for naturalization in April 2006. Id. USCIS submitted name check requests to the FBI in connection with their applications on May 10, 2006, and the results are still pending. Pl.'s Res. Mem. 3; Def. Mem. 2; Def. Ex. B, Decl. of Michael Cannon, Section Chief, National Name Check Program Section, FBI, ¶¶ 41-42. Unlike Mr. Al Daraji, Sameeh and Samia Altayeh have not yet been scheduled for an interview by USCIS. Def. Mem. 2. Thus, subject matter jurisdiction under Section 1447(b) has not been triggered with regard to their applications. See Assadzadeh, 2007 WL 3252771, at *4 (citing Elhaouat v. Mueller, 2007 U.S. Dist LEXIS 58906, at *22 n.11 (E.D. Pa. Aug. 9, 2007) and Ahmed v. Mueller, 2007 U.S. Dist. LEXIS 68847, at *5-6 (E.D. Pa. Sept. 14, 2007)). However, in this Court's October 12, 2007 Memorandum and

---

[7] The government has indicated that Mr. Al Daraji filed a previous naturalization application which was denied on "good moral character" grounds. However, USCIS has provided us with no information about how this previous application might affect the adjudication of his present application (if at all), nor has the agency provided us with any factual detail regarding when they plan to schedule Mr. Al Daraji for a second interview (if ever), nor what further evidence they require and how long it might take to obtain and process such information. As a result, we are without such information to consider in our decision regarding summary judgment.

Order, we asserted jurisdiction over plaintiff's unreasonable delay claim pursuant to the APA and mandamus statute, finding that we have jurisdiction to review the reasonableness of the agency's processing time of Mr. and Ms. Altayeh's applications. See Al Daraji, 2007 WL 2994608, at *3-5.

The APA states that a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); see also 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."); see also Cao, 496 F. Supp. 2d at 576 ("for purposes of compelling agency action that has been unreasonably delayed, the mandamus statute and the APA are co-extensive."). Defendants move for summary judgment on plaintiff's unreasonable delay claim, arguing that plaintiffs cannot show they are entitled to adjudication of their applications by any particular deadline and that the nearly two year delay is not unreasonable as a matter of law. Def. Mem. 15-16. This Court disagrees.

We have already held that both the USCIS and the FBI have mandatory, non-discretionary duties to adjudicate applications for naturalization and complete background checks, such as plaintiffs', within a reasonable period of time, and the fact that neither Congress nor the agency has specified a time frame for doing so makes no difference. See Al Daraji, 2007 WL 2994608, at *4-5 (citing Kaplan v. Chertoff, 481 F. Supp. 2d 370 (E.D. Pa. 2007); see also Al Sharawneh v. Gonzales et al., 2007 U.S. Dist. LEXIS 66546 (E.D. Pa. Sept. 10, 2007) (quoting Elhaouat v. Mueller, 2007 U.S. Dist. LEXIS 58906, at *17 (E.D. Pa. Aug. 9, 2007) (citing Pub. Citizen Health Research Group v. Chao, 314 F.3d 143, 152 (3d Cir. 2005)). Hence, we reject the government's argument that plaintiffs are not entitled to either reasonably timely

9

adjudication of their applications or adjudication at all.

Defendants argue that we should find the agency's processing time reasonable under the six-part standard articulated in Telecommunications Research & Action Center v. FCC, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC").[8]  Def. Mem. 11-15.  We find that the "TRAC factors" do not necessitate a finding of reasonableness in this context by any margin.  Defendants note that some district courts analyzing delays under the "TRAC factors" have denied relief under the APA in similar cases filed against USCIS.  See Def. Mem. 15.  However, many district courts utilizing the "TRAC factors" have found the current USCIS delays unreasonable, and some have found delays of analogous length to the Altayehs' (around two years) presumptively unreasonable as a matter of law under TRAC.  See, e.g., Wang v. Gonzalez, 2007 U.S. Dist LEXIS 92537, *8-10 (N.D. Cal. Dec. 17, 2007) (holding a delay of two years in processing an adjustment of status application presumptively unreasonable as a matter of law); Ying He v.Gonzales, 2007 U.S. Dist. LEXIS 89127 (N.D. Cal. Dec. 4, 2007); Mandhavi v. Gonzales, 2007 U.S. Dist. LEXIS 86300 (N.D. Cal. Nov. 21, 2007); Wang Yi Chao v. Gonzales, 2007 U.S. Dist. LEXIS 76257 (N.D. Cal. Oct. 15, 2007); Dong v. Chertoff, 513 F. Supp. 2d 1158 (N.D. Cal. 2007); Liu v. Novak, 509 F.

---

[8] TRAC enumerates the following six guiding considerations federal courts have used in determining whether agency delay is unreasonable: (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for the rule of reason; (3) delays that might be unreasonable in the sphere of economic regulations are less tolerable when human health and welfare are at stake; (4) the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the nature and extent of the interests prejudiced by the delay; (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.  See TRAC, 750 F.2d at 80.

Supp 2d 1, 10 (D.D.C. 2007).[9]

Furthermore, the TRAC factors are not binding on this Court. Assadzadeh, 2007 WL 3252771, at *6.  While TRAC is persuasive, the Third Circuit articulated its own set of factors regarding reasonableness under the APA in Oil, Chemical, & Atomic Workers Union v. Occupational Safety & Health Administration, 145 F.3d 120 (3d Cir. 1998):

> First, the court should ascertain the length of time that has elapsed since the agency came under a duty to act.  Second, the reasonableness of the delay should be judged in the context of the statute authorizing the agencies action.  Third, the court should assess the consequences of the agency's delay.  Fourth, the court should consider "any plea of administrative error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources."

145 F.3d at 123 (citing The Raymond Proffitt Found. v. EPA, 930 F. Supp. 1088, 1102 (E.D. Pa. 1996) (quoting In re Chemical Workers Union, 958 F.2d 1144, 1149 (D.C. Cir. 1992)).  A court's inquiry into the reasonableness of an agency's delay under the APA is necessarily case-by-case and "fact-intensive," id., and within the discretion of the court. Assadzadeh, 2007 WL 3252771, at *6;  Han Cao, 496 F. Supp. 2d at 577.

Given our Circuit's analysis in Oil, Chemical, & Atomic Workers Union v. Occupational Safety & Health Administration, we note that the Altayehs' applications have been pending for

---

[9] The cited cases concern applications for adjustment of status, rather than applications for naturalization, such as those at issue in the instant case. Different regulations govern adjustment of status (part 209 of Title 8 of the C.F.R.) and naturalization (part 316 of Title 8 of the C.F.R.). However, this court has noted that the government, arguing in this district, has implicitly acknowledged that with respect to a Section 706(1) analysis, the difference between adjustment of status and naturalization is a difference without distinction.  See Elhaouat, 2007 U.S. Dist. LEXIS 58906, at *19 n.8.  Hence, the cited cases provide some guidance regarding a Section 706(1) analysis under the "TRAC factors" in the naturalization context.

11

close to two years. With regard to statutory context, plaintiffs direct the Court's attention to "The Immigration Services and Infrastructure Improvements Act of 2000," in which Congress expresses the normative expectation that "the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application . . . ." See Pl.'s's Res. Mem. 9 (citing 8 U.S.C. § 1571(b)). Congress' expectations do "not necessarily carry the force of law," though the 180-day timetable may provide the Court with general guidance. See Ying He v. Gonzales, 2007 U.S. Dist. LEXIS 89127, at *9 (N.D. Cal. Dec. 4, 2007); Mandhavi, 2007 U.S. dist. LEXIS 86300, at *10 (citing Yang v. California Dep't Soc. Servs., 183 F.3d 953, 958-59 (9th Cir. 1999)); Liu v. Chertoff, 2007 WL 2435157, at *9 (D. Or. Aug. 29, 2007). The 120-day rule articulated in Section 1447(b) also provides some guidance to the Court regarding what constitutes a reasonable period for USCIS to adjudicate a naturalization application. See Sze v. INS, 1997 WL 446236, at *7 (N.D. Cal. July 24, 1997). The government correctly argues that there is no explicit statutory time frame governing naturalization applications where the plaintiff-applicants have not yet been examined. However, the government further claims that "simply not a long enough time" has passed since the Altayehs filed their applications to qualify as an unreasonable delay. See Def. Mem. 15 (citing Liu v. Chertoff, 2007 WL 2893656 (C.D. Ill. Sept. 28, 2007); Safadi v. Howard, 466 F. Supp. 2d 696 (E.D. Va. 2006); Espin v. Gantner, 381 F. Supp. 2d 261 (S.D.N.Y. 2005); Alkenani v. Barrows, 356 F. Supp. 2d 652 (N.D. Tex. 2005)). While the Court can accept the absence of an explicit pre-examination statutory time frame, we find the government's argument on this point a bit inconsistent in that they ask the Court to find both that there is absolutely no time frame outside of which agency delay is unreasonable, yet also ask the Court to find that there is some time

period inside of which agency delay is presumptively reasonable.  We find that determination entirely within the scope of the Court's discretion.  See supra Assadzadeh.

The Court must also consider the consequences of the agency's delay.  Oil, Chemical, & Atomic Workers Union, 145 F.3d at 123.  Plaintiffs allege numerous economic and personal detriments as a result of the delay in adjudicating their naturalization applications.  Specifically, the Altayehs state that they have expended money for application fees, renewal of permanent resident cards, travel documents required of non-citizens, and litigation costs, and that they are barred from applying for any jobs which require United States citizenship.  See Pl. Res. Mem. 4.  They cannot partake in the benefits of citizenship, such as voting and jury service.  Id.  They cannot file for immigration benefits for their family members as citizens.  Id.  Lastly, plaintiffs state they have suffered the stress and "psychological pressure" of awaiting the outcome of their applications.  As long-time legal permanent residents of Middle Eastern origin, they mention the alienation they feel as a result of the government's invocation of terrorism and September 11th in the absence of any personal allegations or evidence related to such activity, and their frustration as the applications of their co-litigants of non-Middle Eastern origin are, one by one, adjudicated by USCIS ahead of theirs.  Id.

The Court must also consider "any plea of administrative error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources."  Oil, Chemical, & Atomic Workers Union, 145 F.3d at 123.  The affidavits submitted by defendants make it plain that both USCIS and the FBI face considerable administrative challenges in completing their mandated duties with the resources currently available to them.  The government points to numerous reasons for the delays in adjudication

caused by the FBI name checks. In December 2002 and January 2003, "heightened national security concerns" led the INS to resubmit 2.7 million name check requests to the FBI in connection with pending applications for immigration benefits, and the FBI is still in the process of resolving the 440,000 of those resubmitted requests requiring additional follow-up, though defendants indicate that fewer than 6,300 currently remain pending. Def. Mem. 5-6; Cannon Decl. ¶ 23-25. The result of this former massive resubmission of name check requests is a current backlog of regularly submitted requests from USCIS. Id. However, defendants state that the sheer volume of incoming name check requests has "historically outpaced" the capacity of the FBI's National Name Check Program. Def. Mem. 6-7; Cannon Decl. ¶ 26. The process is additionally delayed by the failure of the FBI to electronically upload their files; if a record predates October 1995, a paper copy of the record's text must be retrieved in one of more than 265 possible locations across the country, and sometimes the paper files' contents are scattered among multiple FBI field offices, requiring considerable coordination in the retrieval and review of files. Def. Mem. 7; Cannon Decl. ¶ 29.

The Court has considered the considerable administrative demands placed on the FBI Name Check Program and is sympathetic, but the Court is not in a position to relieve defendants of their obligation to comply with their mandatory duties, nor condone defendants' non-compliance. See Chen v. Chertoff, 2007 U.S. Dist. LEXIS 68536, at *35-36 (N.D. Cal. Sept. 6, 2007); Tang v. Chertoff, 493 F. Supp. 2d 148, 158 (D. Mass. 2007). It is not the role of the judicial branch to weigh individual plaintiffs' clear rights to administrative action "against the agency's burdens in complying." See Chen, 2007 U.S. Dist. LEXIS 68536, at *36. Even a cursory review of the problems detailed in defendants' affidavits reveals that the delays suffered

by current applicants for immigration benefits are the result not only of administrative overburdening in light of current "national security concerns," but also the culmination of a long history of insufficient funding and failure to computerize information at a rate adequate to meet administrative demands. If the primary cause of the delay to these plaintiffs' applications is a systemic problem, as defendants suggest, it requires a systemic solution that the Court is not in a position to fund nor implement. Defendants' arguments regarding administrative burdens would be more properly addressed to the political branches, which are in a position to either allocate additional resources to the Name Check Program, or modify the governing statutes and regulations. See Chen, 2007 U.S. Dist. LEXIS 68536, at *36 (citing Eldeeb v. Chertoff, 2007 U.S. Dist. LEXIS 55000, at *12 (M.D. Fla. 2007); see also Tang, 493 F. Supp. 2d at 158[10]; Yan v. Mueller, 2007 U.S. Dist. LEXIS 37861, at *30 (S.D. Tex. May 24, 2007).

Conversely, defendants provide the Court with no evidence regarding delays caused by any error by these plaintiffs and allege no specific complication in processing their applications due to results from their FBI name checks. They do not allege any specific threat to national security posed by the Altayehs themselves. Because defendants invoke national security concerns generally, we note that courts have found that if there is some legitimate national security risk posed by plaintiffs or other applicants currently living and working in the United States, this "surely militates in favor of prompt security checks, not in favor of delays." See

---

[10] "[D]efendants argue that delays in adjudication are due to a high volume of applications and scarce resources, and that this situation is best remedied by the political branches. I agree. If the agencies involved find themselves short of the resources necessary to fulfill their statutory duty to act within a reasonable time, that is a policy crisis. But it is not plaintiffs who ask the Court to relieve the pressure by excusing them from their statutory duty and letting the cost fall on immigrant plaintiffs. I will follow the law and leave it to the political branches to fix the system." Tang, 493 F. Supp. 2d. at 158.

Chen, 2007 U.S. Dist. LEXIS 68536, at *34 (citing Toor v. Still, 2007 U.S. Dist. LEXIS 53173, at *2 (N.D. Cal. 2007) ("considering the fact that most applicants will be physically present in the United States, [permission for inaction] seems antithetical to national security interests.")); Dong, 513 F. Supp. 2d at 1170; Tang, 493 F. Supp. 2d at 158.  While the Court is mindful of national security in the immigration context, national security generally is not "a magic talisman that can be waived in front of the courts whenever the government seeks to insulate itself from judicial review."  Saleem v. Keisler, 2007 U.S. Dist. LEXIS 80044, at *35 (W.D. Wis. Oct. 26, 2007).  Without a specific demonstration that the Altayehs themselves pose a national security risk causing uncommon complications in their applications for naturalization, we find insufficient evidence of reasonableness on the agencies' part to withstand summary judgment.

Accordingly, we grant summary judgment to the Altayehs and find that the most appropriate remedy is to remand their applications to USCIS and the FBI for adjudication within ninety (90) days.  See Song v. Klapakis, 2007 WL 1101283, at *5 (E.D. Pa. April 12, 2007) (citing Haidari, 2006 U.S. Dist. LEXIS 89177, at *17).

### D.　CONCLUSION

For the reasons discussed above, this Court will deny defendant's motion for summary judgment and grant summary judgment to all plaintiffs, and will remand these matters to USCIS and the FBI to complete adjudication of plaintiffs' N-400 applications and background checks within ninety (90) days.

An appropriate Order follows.